T.C. Memo. 1996-189


UNITED STATES TAX COURT


MARCUS WAYNE AND JUDITH CAROLINE RAMSEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16830-94.              Filed April 18, 1996.


Marcus Wayne and Judith Caroline Ramsey, pro sese.

<u>Roberta A. Duffy</u>, for respondent.


MEMORANDUM OPINION

JACOBS, <u>Judge</u>: Respondent determined a $19,575 deficiency in petitioners' 1989 Federal income tax, and a $3,915 section 6662(a) accuracy-related penalty for such year.

The issues for decision are: (1) Whether petitioners are entitled to a claimed $23,822.36 deduction for contributions allegedly made by or on behalf of petitioner Marcus Ramsey to a simplified employer pension-individual retirement account plan; (2) whether petitioners are entitled to deduct business expenses for 1989 in excess of the amounts allowed by respondent; and (3) whether petitioners are liable for the section 6662(a) accuracy-related penalty for such year.

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

For convenience and clarity, we have combined our findings of fact and opinion with respect to each issue. As used herein, the term "petitioner" refers to Marcus Wayne Ramsey; "petitioners" collectively refers to Marcus Wayne and Judith Caroline Ramsey. All section references are to the Internal Revenue Code for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## General Findings

At the time they filed their petition, petitioners, husband and wife, resided in Poway, California. They filed a joint Federal income tax return, Form 1040, for 1989, dated August 14, 1990. Subsequent to filing the petition in this case, petitioners filed an amended 1989 return, Form 1040X, dated April 11, 1995, which respondent accepted. The amended return restated petitioner's wage

income and Schedule A employee business expenses as Schedule C
items.

## Issue 1. Retirement Plan Contributions

The first issue for decision is whether petitioners are
entitled to a deduction for contributions allegedly made by or on
behalf of petitioner to a retirement plan.

### Cal-American

Petitioner was involved in the formation of Cal-American
Insurance Company (Cal-American), a property and casualty insurance
company, and was its president from September 1984 to March 1989.
Prior to Cal-American's formation, petitioner was the deputy
insurance commissioner for the State of California. Cal-American
was acquired in 1987 by Westech Insurance Network, Inc. (Westech),
which also owned Bancsure Insurance Services, Inc. (Bancsure).

Although president of Cal-American, in actuality petitioner
was an employee of Westech.  And, from the time Cal-American was
acquired by Westech until March 1989, petitioner's salary as well
as reimbursement for his expenses were paid by Bancsure, which
issued a Form 1099-Misc. and Form W-2 to petitioner for 1989.  The
Form 1099-Misc. reflected nonemployee compensation in the amount of
$32,422.56.  The Form W-2 reflected wages paid to petitioner in the
amount of $62,500. The $62,500 was composed of salary payments for
January and February, plus a severance payment.

### Arrowhead

Following termination as president of Cal-American, petitioner provided consulting services to Arrowhead General Insurance Agency (Arrowhead). Arrowhead issued petitioner a 1989 Form W-2, reflecting $74,503.25 in wages and $8,041 in Federal and $3,956.31 in State income taxes withheld.

Individual Retirement Account

In February 1989, an individual retirement account, account No. 063-19555-6, was established on petitioner's behalf at Security Pacific National Bank. The account was classified as a "SEP", and Cal-American was the named employer. Petitioner deposited $11,250 into the account at that time. Petitioners claim that petitioner received the $11,250 from Westech, in addition to his wage and severance payments. Petitioners did not include the $11,250 in income for 1989.

On their 1989 tax return, petitioners claimed a $23,822.36 deduction for payments made to a "self-employed SEP", which respondent disallowed. The record does not indicate how petitioners determined the $23,822.36.

Discussion

A Simplified Employee Pension (SEP) plan is described in section 408(k).[1]  A SEP is a plan pursuant to which an employer

---

[1]    SEC. 408(k) states in pertinent part:

(k) Simplified Employee Pension Defined.--

   (1) In general.--For purposes of this title, the term "simplified employee pension" means an individual retirement account or individual retirement annuity--

      (A) with respect to which the requirements of paragraphs (2), (3), (4), and (5) of this subsection are met, and

      (B) if such account or annuity is part of a top-heavy plan, with respect to which the requirements of section 416(c)(2) are met.

   (2) Participation requirements.--This paragraph is satisfied with respect to a simplified employee pension for a year only if for such year the employer contributes to the simplified employee pension of each employee who--

      (A) has attained age 21,

      (B) has performed service for the employer during at least 3 of the immediately preceding 5 years, and

      (C) received at least $300 in compensation (within the meaning of section 414(q)(7)) from the employer for the year.

      *    *    *    *    *    *    *

   (3) Contributions may not discriminate in
(continued...)

makes direct contributions to its employees' individual retirement

_____

[1](...continued)
favor of the highly compensated, etc.--

(A) In general.--The requirements of this paragraph are met with respect to a simplified employee pension for a year if for such year the contributions made by the employer to simplified employee pensions for his employees do not discriminate in favor of any highly compensated employee (within the meaning of section 414(q)).

   *    *    *    *    *    *    *

(4) Withdrawals must be permitted.--A simplified employee pension meets the requirements of this paragraph only if--

(A) employer contributions thereto are not conditioned on the retention in such pension of any portion of the amount contributed, and

(B) there is no prohibition imposed by the employer on withdrawals from the simplified employee pension.

(5) Contributions must be made under written allocation formula.--The requirements of this paragraph are met with respect to a simplified employee pension only if employer contributions to such pension are determined under a definite written allocation formula which specifies--

(A) the requirements which an employee must satisfy to share in an allocation, and

(B) the manner in which the amount allocated is computed.

accounts or individual retirement annuities as defined under section 408(a) and (b). Self-employed individuals or sole proprietors are treated as their own employers under a SEP plan. See secs. 401(c)(4), 408(k)(7).

To prevail, as a threshold matter, petitioners must prove that there was a plan that qualified as a SEP under section 408(k) during 1989, and that such plan was established by Westech or another employer. To do so, petitioners rely on petitioner's employment agreement with Westech, pursuant to which Westech was obligated to establish a SEP/IRA for petitioner's benefit and contribute thereto an amount equal to 15 percent of petitioner's base salary.[2]

The only documents petitioners introduced to substantiate the SEP deduction under scrutiny were petitioner's employment agreement with Westech and a document showing that $11,250 was deposited into the Security Pacific National Bank account. Respondent argues that these documents, by themselves, do not establish that a qualified SEP was established. We agree with respondent.

Although petitioners have shown that $11,250 was deposited into a Security Pacific National Bank account during 1989, petitioners have not shown that Westech or any other employer

---

[2] Under the employment agreement petitioner was to receive a base salary of $75,000 per year. The amount that petitioner deposited into Security Pacific National Bank account No. 063-19555-6 in February 1989 equals 15 percent of petitioner's base salary (15% x $75,000 = $11,250).

established a SEP for petitioner's benefit, as required by section 408(k). Even, however, were we to assume that there was an employer-established SEP for petitioner's benefit, petitioners have failed to show that Westech or any other employer of petitioner made the required qualifying contribution to such a SEP. Indeed, the record indicates that the $11,250 deposit was made by petitioner, and not by Westech or another employer of petitioner. Further, the record does not enable us to trace the source of the $11,250 deposit to the $62,500 or any other employment payment petitioner received from Westech.[3] See sec. 408(l). And finally, the Forms W-2 attached to petitioners' 1989 Form 1040 fail to reflect any amount contributed by Westech to a SEP on petitioner's behalf.

Petitioners allege that not only was petitioner employed as president of Cal-American during the first quarter of 1989, but also for the remainder of 1989 he was self-employed as an insurance consultant. As noted previously, self-employed individuals or sole proprietors are treated as their own employers under a SEP plan. See secs. 401(c)(4), 408(k)(7). However, petitioners have failed to prove that petitioner was self-employed at any time during 1989. Indeed, the record supports a contrary conclusion.

_____

[3] A letter from Bancsure to petitioner dated Mar. 31, 1989, refers to a total severance payment of $61,812.50, of which $6,812.50 represented expense reimbursement and pension payments. The letter makes no allocation of the $6,812.50 as between expense reimbursement and pension payments.

Despite petitioners' claim that petitioner provided consulting services to Arrowhead in 1989 as an independent contractor, Arrowhead issued petitioner a Form W-2 (rather than a Form 1099) for all payments it made to him in 1989; it also withheld State and Federal income taxes from these payments. Moreover, petitioners initially claimed on Schedule A attached to their 1989 tax return all of petitioner's business expenses as employee business expenses. And finally, petitioner did not pay self-employment taxes on the income he received from Arrowhead. The record thus supports a finding that petitioner was an employee of Arrowhead, not an independent contractor. The only evidence to support petitioners' independent contractor allegation is petitioner's self-serving testimony, which we do not believe.

To summarize, petitioners did not meet their burden of proof that an employer-qualifying-SEP was established at any time by or on behalf of petitioner, nor did they prove that an employer of petitioner made a qualifying SEP contribution on petitioner's behalf. Consequently, petitioners are not entitled to the claimed deduction for a SEP contribution.

Issue 2. Business Expenses

The second issue for decision is whether petitioners are entitled to business expense deductions in excess of the amounts allowed by respondent.

Background

Petitioners have five daughters, three of whom lived with them during 1989. Petitioners resided at 28316 Gitano, Mission Viejo, California (Mission Viejo residence), until August 1989, when they sold their Mission Viejo residence and moved to 14026 Donart Drive, Poway, California (Poway residence).

The Mission Viejo residence contained 2,100 square feet. Petitioner claimed he used an enclosed loft area in this residence as an office. This room was no larger than 144 square feet.

Petitioners' Poway residence measured 2,360 square feet. Petitioners remodeled and improved the Poway residence by: Framing and plastering the basement, building a patio cover, building a closet in the bedroom of one of their daughters, placing stained-glass windows in the living room and foyer, building a pad for their travel trailer, installing an intercom system, installing blinds throughout the house, installing a dehumidifier, and installing rain gutters.

Petitioner claims he used the basement of the Poway residence as an office; but he testified that when visitors came to the Poway residence for business purposes, he would meet with them in the living room, the kitchen, or the family area, as opposed to meeting them in his "basement office".

Petitioners determined that 9.53 percent of the Mission Viejo and Poway residences was used for business purposes in 1989.

During the year in issue, petitioners owned at least 4 cars: A 1987 Suzuki Samurai, a 1987 Cadillac Fleetwood, a 1987 Ford Aerostar, and a 1984 Dodge Colt. Petitioner claims he used the Cadillac 82 percent of the time for business and that the other automobiles were used for personal use. Petitioners also owned a 1987 Nomad Travel Trailer (a recreational vehicle). The travel trailer was stored at the Laguna Hills Golf Range and was not used for business purposes.

Pursuant to petitioner's employment agreement with Westech, Westech was required to provide petitioner with either a $250,000 life insurance policy or to reimburse him for the cost of keeping an existing policy in force. Westech was also required to reimburse petitioner for his employee business expenses,[4] including office supplies, telephone, dues, travel and entertainment, and automobile expenses of $1,000 per month. Arrowhead also reimbursed petitioner for his employee business expenses.

---

[4] Westech reimbursed petitioner for at least $4,266.41 of the business expenses he incurred in 1989.

Petitioners' 1989 Forms 1040 and 1040X

Petitioners claimed a $51,363.96[5] deduction for unreimbursed employee business expenses on Schedule A and Form 2106 (Employee Business Expenses) attached to their 1989 Form 1040.  The deduction consisted of the following:

| | |
|---|---|
| Vehicle expenses | $15,987.84 |
| Parking fees | 39.00 |
| Travel expense | 7,597.64 |
| Business expenses | 23,230.95 |
| Meals and entertainment | 5,635.66 |
| Less 20 percent of meals and entertainment | (1,127.13) |
| Total | $51,363.96[6] |

In the notice of deficiency, respondent allowed $8,096 of the claimed vehicle expenses and $39 for parking fees. Because Westech reimbursed petitioner for some of these expenses, respondent reduced the otherwise allowable deduction by $3,000.  Respondent disallowed the remainder of the claimed employee business expenses for lack of substantiation.

Subsequent to filing their petition, petitioners filed an amended return (Form 1040X) for 1989 and recharacterized their

_____

[5]    Petitioners claimed miscellaneous expenses totaling $53,490.34 on Schedule A attached to their 1989 Form 1040.  This amount was composed of $2,126.38 in claimed investment expenses (which petitioners have conceded) and the $51,363.96 in employee business expenses addressed below.  After applying the 2 percent of adjusted gross income limitation, petitioners' deduction for miscellaneous expenses totaled $50,783.03.

[6]    The parties stipulated that Westech reimbursed petitioner for at least $4,266.41 of his 1989 business expenses.

previously claimed Schedule A unreimbursed employee business expenses as Schedule C business expenses associated with petitioner's services as an "independent contractor". Petitioners also increased the amount of the deduction from $51,363.96 to $57,348. The expenses claimed on Schedule C were:

| | |
|---|---|
| Advertising | $513 |
| Bad debt | 10,000 |
| Car operating expenses | 6,201 |
| Depreciation (car) | 2,850 |
| Depreciation (house) | 10,300 |
| Employee benefits (life insurance) | 1,424 |
| Interest (car) | 1,660 |
| Office expense | 4,046 |
| Supplies | 9,023 |
| Travel | 7,465 |
| Meals/entertainment | 4,832 |
| (less 20 percent of meals and entertainment) | (966) |
| Total | $57,348[7] |

Discussion

Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers bear the burden of establishing that they are entitled to the claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933). This includes the burden of substantiating the amount and purpose of the item claimed. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir.

---

[7]  The parties stipulated that petitioners are not entitled to the $10,000 bad debt deduction.

1976); sec. 1.6001-1(a), Income Tax Regs. If claimed deductions are not adequately substantiated, we may estimate them, provided we are convinced that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Pursuant to section 162(a), a taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. In general, an expense is ordinary if it is considered "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. duPont, 308 U.S. 488, 495-496 (1940). The term "ordinary" is also used to distinguish currently deductible items from capital expenditures. Commissioner v. Tellier, 383 U.S. 687, 689-690 (1966). An expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985); Heineman v. Commissioner, 82 T.C. 538, 543 (1984). Only the portion of an expense that is reasonable in amount is deductible under section 162. United States v. Haskel Engineering & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967).

Pursuant to section 262(a), personal, living, or family expenses may not be deducted, except as otherwise expressly provided in the Code. Furthermore, no deduction is allowed if an employee is reimbursed for his expenses and does not include such

reimbursement in his gross income.  See sec. 1.162-17(b), Income Tax Regs.

At trial, petitioners produced receipts and checks that they claim represent the expenses they incurred in the course of petitioner's business.  Respondent argues that the claimed expenses are neither ordinary nor necessary.  For the reasons discussed below, we agree with respondent.

The record clearly indicates that petitioners attempted to claim as business expenses those that were personal in nature. Furthermore, the evidence shows that a portion of the claimed business expenses were reimbursed either by Westech or Arrowhead.

We hereafter discuss separately each of petitioners' claimed business expenses.

1.  <u>Advertising</u>

Three of petitioners' daughters played recreational softball and soccer. Petitioners deducted $513 in costs associated with their daughters' participation in softball and soccer as an advertising expense.  They claim that they sponsored the teams and in return received advertising space in the team pamphlet.

Petitioners admit that the payment for the claimed expense was in reality a contribution to the league in which their daughters' teams competed.  We find that this payment was a personal expense, not a business expense.  Petitioners are not entitled to the claimed 1989 advertising expense.

2.  Car Expenses

a.  Operating Costs

Petitioners deducted $6,201[8] as automobile operating expenses. Although petitioners provided numerous receipts to substantiate this deduction, the receipts do not connect the claimed expenses to the use of the Cadillac, the only car petitioner used for business purposes.  Moreover, some of the claimed expenses are clearly not related to the use of any automobile.  Having reviewed and considered petitioners' documentation, we hold that petitioners are not entitled to a deduction for any of the claimed $6,201 automobile expenses.

b.  Interest

Petitioners deducted $1,660 as an interest expense.  They presented evidence that they incurred this expense with regard to the Cadillac.  Because the parties have stipulated that petitioner used the Cadillac 82 percent of the time for business use, we allow

---

[8]     The claimed operating expenses all related to the Cadillac and were composed of the following:

| | |
|---|---|
| Insurance | $849.54 |
| Operating costs | 3,818.13 |
| Repairs | 1,310.08 |
| Visa and Discover charges | 1,584.68 |
| Total | $7,562.43 |

Times 82 percent business use = $6,201.19

a deduction for interest expense in the amount of $1,361 (82 percent x $1,660), rather than the amount petitioners claimed.

### c. Depreciation

Petitioners claimed a $2,850 depreciation deduction for the Cadillac. In the notice of deficiency, respondent allowed an amount in excess of this figure.

### 3. Home Office Expenses

Petitioners claimed numerous household expenses as part of their claimed home office deduction. Included within this claimed deduction are the following:

```
Depreciation
     Direct capital improvements          $9,135.03
     Indirect capital improvements         1,164.56
Office expenses
     Telephone (Mission Viejo)               467.45
     Telephone (Poway)                       503.21
     Cellular telephone
      (account 0438631)                     1,138.88
      (account 1019538)                       471.12
     Home insurance
      (9.53 percent of $525.33)
      (Mission Viejo)                          25.59
      (Poway)                                  24.47
     Home operating costs
       (9.53 percent of $14,854.86)         1,415.67
```

Section 280A denies deductions with respect to the use of a dwelling unit used by the taxpayer as a residence during the taxable year. Section 280A(c), however, permits the deduction of expenses allocable to a portion of the dwelling unit that is used exclusively and on a regular basis as "the principal place of business" for any trade or business of the taxpayer. Sec.

280A(c)(1)(A). In the case of an employee, the exclusive use of a portion of the dwelling unit must be for the convenience of the employer. Sec. 280A(c)(1). The determination as to whether a dwelling unit is the principal place of business of a taxpayer depends on the particular facts of each case. Commissioner v. Soliman, 506 U.S. 168, 174-175 (1993).

The facts in this case clearly reveal that petitioners are not entitled to any home office expense deduction for 1989. Petitioners have failed to prove that during 1989 petitioner used his claimed home office exclusively and on a regular basis as his principal place of business, or as a place of business for meeting with clients or customers in the normal course of his business. Nor have petitioners satisfied the convience-of-the-employer requirement of section 280A(c)(1) for the period during which petitioner was an employee.

a. Depreciation (Houses)

Petitioners determined that 9.53 percent of their Mission Viejo and Poway residences was used for business purposes in 1989. They claimed a $9,135.03 depreciation deduction for direct capital improvements to their Poway residence. This deduction includes expenses associated with remodeling the basement for use as petitioner's business office.

Petitioners also deducted $1,164.56 (9.53 percent x $12,219.94) as indirect capital improvements to their Poway

residence. The expenses for which a deduction was claimed included: Stained glass windows in the living room and foyer, a closet in the bedroom of one of their daughters, a trailer pad for petitioners' recreational vehicle, miscellaneous carpentry work, a dehumidifier, an intercom system, and rain gutters.

Petitioners claimed depreciation based on a percentage of all repairs or improvements to both their Mission Viejo and Poway residences, as well as their day-to-day costs of maintaining each residence (such as the costs for their housekeeper, gardener, cable television, dishwasher repair, plumbing, etc.), whether business related or not.

As previously stated, petitioners have not met the tests of section 280A(c)(1); thus they are not entitled to the claimed depreciation deduction.

### b.  Telephone Expenses

Petitioners claimed a deduction for $2,581 of telephone expenses (both for regular and cellular telephones).  They had a second telephone line installed at both their Mission Viejo and Poway residences.

At first, petitioners argued that these telephone lines were used exclusively for business purposes.  They later admitted that although they had deducted 100 percent of these expenses, personal calls were also made from these telephones.  Petitioners were unable to approximate the percentage of business use.

With regard to the cellular telephone, petitioners failed to provide evidence that the phone was used solely for business purposes, and they were unable to estimate the percentage of business use.

Petitioners are not entitled to any of their claimed $2,581 telephone expense deduction.

### c.  Home Insurance and Operating Costs

Petitioners deducted 9.53 percent (amounting to $50[9]) of the cost of insuring both their residences, as well as $1,415.67 for home office operating costs (9.53 percent x $14,854.86).  The home office operating costs consist of the following:  Petitioners' gardener, petitioners' housekeeper, storage for their recreational vehicle at the local golf range, membership fees for a recreational vehicle club, home appliance and fixture repairs, plumbing repairs, lawn mower repairs, utilities, garbage, and water expenses, cable television expenses, homeowners' association fees, charges for the installation of a security system as well as the monthly charges associated therewith, playground equipment for their backyard, and miscellaneous home maintenance costs.

None of these expenses was shown to be deductible by petitioners under section 280A or any other provision of the Code; rather, these costs appear to be personal in nature.  Consequently, petitioners are not entitled to deduct these expenses.

---

[9]    Their deduction was mistakenly based on a calculation of 382 days, rather than 365 days.

### 4. Office Supplies

Petitioners claimed a $9,023 deduction for office supplies. While they provided copies of numerous receipts, checks, and charge card billing statements to support their claimed deduction, petitioners failed to show that the expenses were ordinary and necessary to the conduct of petitioner's business or the reasonableness of these expenses. Again, the record reveals that petitioners attempted to deduct personal expenses as business expenses. This is not permitted; the claimed deductions are not allowable.

### 5. Employee Benefits

Petitioners claimed a $1,424 employee benefit program expense. Such expense related to petitioner's life insurance policies. This expense was not shown to be a properly allowable business expense.

### 6. Travel/Meal and Entertainment Expenses

Petitioners claimed $7,465 in travel expenses and $4,832 in meal and entertainment expenses.

Section 274(d) requires that a taxpayer substantiate by adequate records or by sufficient evidence corroborating his own statement expenses claimed for travel and entertainment by showing (1) the amount of the expense, (2) the time and place of travel or entertainment, (3) the business purpose of the travel or entertainment, and (4) the business relationship to the taxpayer of each person entertained. These four elements must be established

for each separate expenditure.  Sec. 1.274-5(c)(1), Income Tax Regs.

Petitioners have failed to produce any of the requisite detailed substantiation.  They have failed to present evidence as to the nature and business purpose of the claimed expenses.  We therefore disallow petitioners' 1989 travel, meal, and entertainment expenses in full.

Issue 3.  Accuracy-Related Penalty

The final issue for decision is whether petitioners are liable for the section 6662(a) accuracy-related penalty for negligence or substantial understatement of income tax for 1989.  Section 6662 imposes an addition to tax equal to 20 percent of the portion of the underpayment that is attributable to (1) negligence or disregard of rules or regulations, or (2) substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

"Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

There is a substantial understatement of income tax if the amount of the understatement for the taxable year exceeds the greater of (1) 10 percent of the amount required to be shown on the tax return or (2) $5,000. Sec. 6662(d)(1)(A). The amount of the understatement is reduced, however, if there was substantial authority for the taxpayer's treatment of the item. Sec. 6662(d)(2)(B). In order to satisfy the substantial authority standard, petitioners must show that the weight of authorities supporting their position is substantial in relation to those supporting a contrary position. Antonides v. Commissioner, 91 T.C. 686, 702 (1988), affd. 893 F.2d 656 (4th Cir. 1990).

Petitioners have the burden of proving that respondent's determination of the accuracy-related penalty is in error. Rule 142(a). Petitioners have failed to provide any evidence to show that they were not negligent (indeed the record reveals otherwise), and they have not pointed to any authorities to support their position and bring them within the exception to the definition of substantial understatement. Thus, we sustain respondent's determination with regard to this issue.

To reflect the foregoing,

Decision will be entered
under Rule 155.