BEN W. HEINEMAN AND NATALIE G. HEINEMAN, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4163–81.     Filed March 26, 1984.

*Frederic W. Hickman, John L. Rogers III,* and *Michael M. Conway,* for the petitioners.

*Lawrence C. Letkewicz,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income taxes:

| Year | Deficiency |
| --- | --- |
| 1976 | $11,076.76 |
| 1977 | 10,515.89 |
| 1978 | 11,694.07 |

The issue for decision is whether the petitioners may deduct amounts attributable to the maintenance and depreciation of a separate office located on property where they also had a summer home under sections 162(a) and 167 of the Internal

Revenue Code of 1954,[1] or whether they are nondeductible personal expenses under section 262.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Ben W. and Natalie G. Heineman, husband and wife, were legal residents of Chicago, Ill., at the time they filed their petition in this case. They filed their joint Federal income tax returns for 1976, 1977, and 1978 with the Internal Revenue Service Center, Kansas City, Mo. Mr. Heineman will sometimes be referred to as the petitioner.

The petitioner was the president and chief executive officer of Northwest Industries, Inc. (Northwest), during the years in issue. Northwest is a large conglomerate which had its principal offices in Chicago, Ill., during such years. It was formed in 1968 through the merger of the Chicago & Northwestern Railway Co. and subsidiaries, of which the petitioner was president, and the Philadelphia & Reading Corp. and subsidiaries. Shortly after the formation of Northwest, the Chicago & Northwestern Railway operations were sold to a new corporation formed by the railroad's employees. Northwest is a holding company with seven operating companies and has diversified interests in transportation, chemical products, consumer products, and industrial products. The combined companies have approximately 41,000 employees, and in 1981, they had sales in excess of $3 billion and net earnings of approximately $278 million before a special after-tax gain.

For many years, the petitioner has set aside the month of August to concentrate on long-range planning for Northwest and its predecessor. During the years in issue, he was responsible for reviewing and approving, or disapproving, long-range plans for the operating companies and the holding company. At the beginning of each calendar year, the operating companies began developing plans for the next 4 years. Such plans were submitted to the petitioner for review during August prior to their finalization during the fall and winter of each year.

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

In 1959, the petitioners purchased 32 acres of land in Sister Bay, Wis., which included the main house, a cottage for help, and other structures. Sister Bay is located on the western shore of the peninsula that separates Green Bay from Lake Michigan. Later, they purchased additional land, and by 1968, they owned approximately 60 acres. The main house is situated on top of a 150-foot limestone cliff and overlooks Green Bay. The petitioners usually spent 6 weeks, from mid-June until the end of July, sailing on the Great Lakes, and thereafter, they returned to their home in Sister Bay. By the end of July, the proposed 4-year plans of the operating companies were delivered to the petitioner in Sister Bay, and he worked on such plans from the beginning of August until Labor Day. The petitioner did not want to be in Chicago during August because he did not like the hot summer weather there.

In addition, the petitioner could perform more effectively his work of studying and reviewing the proposed 4-year plans of the operating companies while he was away from the corporate offices in Chicago. His office in Chicago consisted of a suite which contained a board of directors' office, a directors' lounge, a conference room, his own office, and separate offices for his administrative assistant, his secretary, and a special assistant. However, because he considered it part of his responsibilities to be available to Northwest personnel and others in the community when he was at his office in Chicago, his corporate office was not conducive to reviewing the 4-year plans.

From 1959 until 1969, the petitioner used part of the main house at Sister Bay as a makeshift office. However, this arrangement was not satisfactory. His work was interrupted by social visitors to the house and by telephone calls.

In 1969, the petitioner had a separate office built on the Sister Bay property at a cost of approximately $250,000. Such office consists of a single room suspended from the side of the limestone cliff by a cantilevered steel frame anchored in the cliff wall. The office is about 100 yards from the main house and is located slightly below the top of the cliff so that it does not obstruct the view from the main house. The office is a four-sided structure measuring approximately 20 feet by 20 feet. It consists of a single room with restroom facilities and a small kitchen. The office contains a desk, a conference table, two

couches, and file cabinets. It is equipped with an ordinary telephone, an extension of the switchboard at Northwest's Chicago office, and a computer terminal, installed in 1978, which is connected with Northwest's main computer system in Chicago. Northwest pays the cost of maintaining such communications equipment.

The petitioner did not ask the board of directors of Northwest to provide him with office facilities that would be isolated from the distractions of the corporation's Chicago offices. He paid the entire cost of constructing and maintaining the office, and he did not seek reimbursement from Northwest. He did not want Northwest to have a claim on any part of his Sister Bay property.

The petitioner has used the office for long-range planning from the beginning of August until Labor Day every year since it was constructed. During these periods, he worked at the office 6 or 7 days a week for at least 5 hours a day; occasionally, he worked at the office for 12 to 14 hours a day. While he was in Sister Bay, the petitioner received a daily mailpouch from the Northwest offices in Chicago which contained only essential materials. Northwest paid the cost of the daily mailpouch. Telephone calls to the petitioner at the office were screened by his secretary or administrative assistant. During the period that the petitioner was working at the office in Sister Bay, his administrative assistant spoke with him several times a day. The petitioner also spoke by phone to a number of other people. Sometimes, executives of Northwest or its subsidiaries came to the office for meetings with the petitioner. Very occasionally, the petitioner took social guests to the office to view the sunset. During the years in issue, neither the petitioner nor anyone else lived or stayed overnight in the office. The petitioner believed that such office allowed him to perform more effectively the work of reviewing the long-range corporate plans because he could concentrate on such work and was subject to fewer diversions.

On their Federal income tax returns for the years in issue, the petitioners deducted the following amounts with respect to the office:

| Year | Maintenance | Depreciation |
|------|-------------|--------------|
| 1976 | $4,171 | $12,585 |
| 1977 | 5,534 | 11,213 |
| 1978 | 7,054 | 9,891 |

The Commissioner disallowed such deductions in full.

OPINION

The parties have agreed that section 280A, relating to the use of a home as an office, is not applicable in this case because they agreed that the office was not a dwelling unit which was used as a residence within the meaning of section 280A(a). They have also agreed that the expenses claimed by the petitioners were paid and that the amounts of such expenses and depreciation were reasonable. Thus, the issue for us to decide is whether the expenses of maintaining the office and the depreciation attributable to it are items deductible under sections 162(a) and 167 or whether any deduction for such items is denied by section 262 as personal, living, or family expenses.

Section 162(a) allows a deduction for all the ordinary and necessary expenses of carrying on a trade or business, and section 167 allows a deduction for an allowance for depreciation of property used in a trade or business. On the other hand, section 262 denies a deduction for any personal, living, or family expenses. When both sections may be applicable, section 262 takes precedence over section 162. *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 17 (1974); *Sharon v. Commissioner*, 66 T.C. 515, 522 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978). The distinction between trade or business expenses on the one hand and personal expenses on the other is necessarily based on a weighing and balancing of the facts and circumstances in each case. *R. R. Hensler, Inc. v. Commissioner*, 73 T.C. 168, 176–177 (1979); *Cardozo v. Commissioner*, 17 T.C. 3, 7 (1951). The petitioner has the burden of showing that a particular expense is not a personal, living, or family expense. *Sharon v. Commissioner*, 66 T.C. at 523; *Henry v. Commissioner*, 36 T.C. 879, 884 (1961).

The petitioner argues that his construction and use of the office was an ordinary and necessary business expense required by his unique situation. He claims that he needed time

to think about the plans for Northwest's future, in a solitary atmosphere, uninterrupted by the daily demands of the corporate headquarters. The petitioner's Sister Bay office allowed him to maintain contact with the Chicago corporate offices while at the same time providing him with isolation from the daily distractions and interruptions of the corporate headquarters.

The Commissioner does not dispute the petitioner's need to isolate himself from the daily interruptions of the corporate headquarters. The Commissioner also concedes that the petitioner spent all his time at the Sister Bay office working on business matters and that the office, with insignificant exceptions, was never used for personal purposes. Nevertheless, the Commissioner maintains that the expenses of constructing and maintaining the Sister Bay office do not satisfy the "necessary" test of section 162(a) because the petitioner could have secured the needed isolation in the corporate headquarters merely by ordering his staff not to permit any interruptions. He also argues that the construction and use of the office were motivated by the petitioner's personal preference to work in Sister Bay rather than in Chicago during August of each year.

An expense meets the necessary test if it is appropriate and helpful in carrying on the trade or business. *Commissioner v. Tellier*, 383 U.S. 687, 689 (1966); *Welch v. Helvering*, 290 U.S. 111, 113 (1933). In his testimony, the petitioner described the work that he carried on in the Sister Bay office in August and explained why he could not secure the necessary isolation in his Chicago office. He stated that he could perform the work of reviewing the long-term plans more effectively in the Sister Bay office. We found his testimony to be persuasive. We accept his claim that if he were in Chicago, there would be some demands on his time that could not be resisted. Despite the offices that Northwest provided him in Chicago and the staff that assisted him, there would be requests by people in and out of the corporation to see him, and it would be impracticable to say "no" to some of those requests. It is his judgment that his review of the long-term plans and the contemplation and thinking that such work requires could be performed more effectively at his office in Sister Bay; his reasons for reaching that judgment were convincing, and we will not substitute our

judgment for his. *Lilly v. Commissioner*, 343 U.S. 90, 93 (1952); *Welch v. Helvering, supra.* Under such circumstances, it is clear that the expenses of maintaining the office and the depreciation attributable to it meet the appropriate and helpful test. *Commissioner v. Tellier, supra; Welch v. Helvering, supra.*

The petitioner admits that he did not wish to be in Chicago in the summer. However, he is not claiming a deduction for the expenses of going to and from Wisconsin or for his living expenses while there. He is not seeking to deduct personal living expenses because he is carrying on business while in Wisconsin. Compare *Commissioner v. Flowers*, 326 U.S. 465 (1946). Nor is the petitioner attempting to deduct any part of the expenses of maintaining the Wisconsin home on the grounds that he is carrying on business in such home. Compare *Sharon v. Commissioner, supra.* The only expenses for which the petitioner claims a deduction are those attributable to the construction and maintenance of the office. Such expenses are entirely attributable to the fact that the petitioner is working while in Wisconsin.

The Commissioner suggests that such expenses were not required for the petitioner to perform his work but were incurred solely because of his personal decision to perform such work in Wisconsin. Yet, we have accepted the petitioner's judgment that such work could be performed more effectively away from his Chicago office, and it is not for us to say what alternative arrangements should be made. He is not required to use another office in Chicago or nearby because such a facility would be less expensive. *Lilly v. Commissioner, supra; Welch v. Helvering, supra.* There was a business reason for performing the review of the long-term plans away from the Chicago office, and the expenses of the office for performing that work are not made nondeductible because the petitioner chose to perform the work in an environment more suitable to him.

Moreover, the Treasury regulations recognize that if business expenses are incurred while a taxpayer is on a personal trip, the business expenses are deductible. Section 1.162–2(b)(1) of the regulations provides:

(b)(1) If a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and

from such destination are deductible only if the trip is related primarily to the taxpayer's trade or business. If the trip is primarily personal in nature, the traveling expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at such destination. However, expenses while at the destination which are properly allocable to the taxpayer's trade or business are deductible even though the traveling expenses to and from the destination are not deductible.

If the petitioner is considered to be in Wisconsin in August for personal reasons, he is not entitled to deduct the costs of going to and from Wisconsin or the costs of living there, but he is not claiming a deduction for those expenses. He is simply claiming a deduction for his business expenses while there, and the regulation clearly provides that such expenses are deductible.

In support of his position, the Commissioner also maintains that the petitioner should be denied the deduction for the expenses of constructing and maintaining the office because he did not request Northwest to bear such expenses. When an employer has a plan for reimbursing certain employee expenses, and when the employee does not seek such reimbursement, the failure to claim reimbursement results in the disallowance of a deduction for such expenses. See *Lucas v. Commissioner*, 79 T.C. 1, 7 (1982); *Boser v. Commissioner*, 77 T.C. 1124, 1132 (1981), affd. without published opinion ____ F.2d ____ (9th Cir., Dec. 22, 1983). However, where there is no plan for reimbursement and where a corporate officer personally incurs expenditures which enable him to better perform his duties to the corporation and which have a direct bearing on the amount of his compensation or his chances for advancement, the failure to seek reimbursement for such expenses from his employer is no absolute bar to the employee claiming a deduction for such expenses. *Walliser v. Commissioner*, 72 T.C. 433, 437 (1979). Here, it is not altogether clear that Northwest would have borne the costs of the petitioner's Wisconsin office even if the petitioner had requested the corporation to do so. In any event, the petitioner had a significant reason for not requesting the corporation to do so. Under the circumstances, the petitioner's failure to request Northwest to bear such expenses is no indication that the expenses were not incurred for a business purpose.

After weighing and balancing the relevant considerations, we conclude and hold that the expenses of constructing and maintaining the petitioner's Wisconsin office were appropriate

and helpful to the performance of his duties as the chief executive officer of Northwest and that therefore such expenses are deductible under section 162(a) and the depreciation attributable thereto is deductible under section 167.

*Decision will be entered for the petitioners.*