T.C. Summary Opinion 2006-175


UNITED STATES TAX COURT



ANKE LUNSMANN-NOLTING, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13214-05S.            Filed October 24, 2006.


Anke Lunsmann-Nolting, pro se.

<u>Michelle L. Maniscalco</u>, for respondent.



DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code as in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined for 2002 a deficiency in petitioner's Federal income tax of $3,595. After a concession,[1] the issue for decision is whether petitioner engaged in her rental real estate activity in 2002 with the objective of making a profit.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in New York, New York.

During 2002, petitioner was employed as an assistant dean at Columbia University Medical Center (CUMC). Petitioner, among other things, organized fundraising events for CUMC and maintained alumni and student relations. One of the locations at which petitioner conducted her fundraising events was Lubec, Maine.

## History of the Cottages

In 1979, petitioner visited Lubec, a small town located in a remote area of Maine near the Canadian border. Lubec has a depressed economy because it does not have an industry. Lubec also is not viable as a tourist attraction because it is located far from major transportation and population centers. Petitioner, nevertheless, saw potential in Lubec and conceived

---

[1]Petitioner concedes that she is required to include in her income for 2002, an additional tax refund of $475 from New York State.

the idea of creating a "think tank" and a laboratory where scientists from CUMC could gather and conduct their research.

From 1980 to 1987, petitioner and a number of scientists from CUMC visited Lubec every summer to work on projects. During these visits, petitioner and the scientists rented and stayed at places like old barns, broken down houses, and old factories. Eventually, some of petitioner's colleagues purchased houses in Lubec. In 1987, petitioner purchased a large Victorian house there, which she used as her "base" whenever she and her guests visited the town in the summer.

Subsequently, it was suggested to petitioner that Lubec might be used as a vehicle to raise funds for the benefit of CUMC. The plan was to invite potential donors to Lubec for an opportunity to meet personally with the scientists. Petitioner, anticipating housing issues, purchased two cottages (lot Nos. 128A and 129) near her Victorian house in 1990. Petitioner planned to repair and improve the cottages and to rent them to visiting donors and scientists.

In 1990, the cottage on lot No. 128A was occupied by tenants who were unable to pay their rent. Petitioner eventually evicted the tenants, but the tenants left the cottage in poor condition. In the winter of 1996, squatters occupied and vandalized the cottage on lot No. 129. As a result, both cottages were

uninhabitable, and petitioner had no expectation of renting either in 2002.

Petitioner claimed on her Schedule E, Supplemental Income and Loss, for 2002, cleaning and maintenance costs of $280 and taxes of $236 for a "One Family Cottage at 18 Upper, Lubec, Maine, Lot 128A". Petitioner also claimed cleaning and maintenance costs of $280 and taxes of $531 for a "One Family Cottage at Lot #129, Lubec, Maine, Lot 129".

In 1997, petitioner purchased a cottage (lot No. 126) near her Victorian house, again with the plan of repairing and improving the cottage and renting it to visiting donors and scientists. The cottage on lot No. 126 was complete and ready for rental in 2001. On petitioner's Schedule E, for 2002, she reported rental income of $500 and claimed depreciation of $4,596 for "2 Lots of Land Next To And, Lubec, Maine, Lot 126". Petitioner also claimed for lot No. 126 cleaning and maintenance costs of $2,501, insurance of $145, repairs of $600, supplies of $51, taxes of $821, and utilities of $327.

<u>2002 Deficiency</u>

Petitioner filed for 2002 a Form 1040, U.S. Individual Income Tax Return. Respondent issued to petitioner a statutory notice of deficiency disallowing a deduction of $9,868, representing the sum of the rental real estate losses that petitioner claimed for lot Nos. 126, 128A, and 129 on her

Schedule E.  Respondent determined that petitioner was not entitled to the deduction because she did not engage in the rental real estate activity with the objective of earning a profit.

## Discussion

The Commissioner's determinations are presumed correct, and generally, the taxpayer bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]

Tax deductions are a matter of legislative grace with the taxpayer bearing the burden of proving entitlement to the deductions claimed.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

### Section 183

Section 183(a) disallows any deduction attributable to activities not engaged in for profit except as provided under section 183(b).  Section 183(b)(1) allows those deductions that otherwise are allowable regardless of profit objective.  Section 183(b)(2) allows those deductions that would be allowable if the activity were engaged in for profit, but only to the extent that gross income attributable to the activity exceeds the deductions permitted by section 183(b)(1).  Section 183(c) defines an

---

[2]Petitioner has not raised the issue of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  This Court concludes that sec. 7491 does not apply because petitioner has not produced any evidence that establishes the preconditions for its application.

"activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

An activity is engaged in for profit if the taxpayer entertained an actual and honest, even though unreasonable or unrealistic, profit objective in engaging in the activity. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Ronnen v. Commissioner, 90 T.C. 74, 91 (1988) (taxpayer's objective of making a profit must be bona fide); sec. 1.183-2(a), Income Tax Regs.

The determination of whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all the facts and circumstances of each case. Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Jasionowski v. Commissioner, 66 T.C. 312, 319 (1976); sec. 1.183-2(b), Income Tax Regs. Greater weight is given to the objective facts than to the taxpayer's own statements of intent. Sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors that should normally be taken into account in determining whether the requisite profit objective has been shown. The factors are: (1) Manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his

advisers; (3) the time and effort expended by the taxpayer; (4) expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. No single factor is determinative. Sec. 1.183-2(b), Income Tax Regs.

### Lot Nos. 128A and 129

In 2002, the cottages on lot Nos. 128A and 129 had been uninhabitable for several years, and petitioner had no expectation of renting either cottage. Therefore, petitioner was not holding lot Nos. 128A and 129 in connection with any activity for profit.

Petitioner claimed for lot Nos. 128A and 129 cleaning and maintenance costs and taxes on Schedule E. Generally, no deduction is allowed for personal, living, or family expenses. Sec. 262(a). Accordingly, petitioner is not entitled to claim a deduction for cleaning and maintenance costs.

State and local real property taxes, however, are allowed as a deduction for the taxable year within which they were paid. Sec. 164(a)(1). Section 164(a)(1) allows the owner of property a deduction for real property taxes regardless of whether they were paid or incurred in a trade or business. See sec. 183(b)(1);

<u>Tschetter v. Commissioner</u>, T.C. Memo. 2003-326; sec. 1.183-1(d)(3), <u>Example</u> (<u>ii</u>), Income Tax Regs.  Respondent does not dispute that petitioner paid real property taxes for lot Nos. 128A and 129 in 2002.  The Court holds that petitioner is not entitled to claim a deduction for real property taxes paid in 2002 on Schedule E, but she is entitled to claim a deduction for such taxes on Schedule A, Itemized Deductions.

Lot No. 126

Petitioner contends that she is entitled to deduct expenses and depreciation for the cottage on lot No. 126, asserting that she intended to profit on the property by renting the cottage to local citizens and visiting scientists.  Respondent disagrees, asserting that petitioner is not entitled to any deductions claimed under Schedule E in excess of $500.[3]  Respondent determined that petitioner did not hold the property with a profit objective.

The Court has reviewed the evidence presented by petitioner and respondent and concludes that petitioner has not sufficiently shown that she held the property with the objective to derive a profit from the cottage during 2002.

Petitioner did not carry on the activity in a businesslike manner.  Although petitioner claims to have had an interest in

_____

[3]Respondent has allowed a deduction of $500 under sec. 183(b)(2), which represents the gross income attributable to the activity.

renting the cottage for either year-round or summer rentals, she did not advertise in the local papers or on the Internet. Petitioner advertised the availability of her cottage by word of mouth from the local community and by posting 8-1/2- by 11-inch sheets of white cardboard by her cottage's front door, by her cottage's back door, by her caretaker's door, and by the door of her Victorian house. All of these doors were located within two blocks of each other.

In an e-mail from petitioner in response to a friend's inquiry about the possibility of renting the cottage, petitioner expressed a desire to avoid renting to citizens from the local area. This calls petitioner's profit objective into question since petitioner advertised only in Lubec.

Moreover, petitioner insisted that prospective tenants be interviewed either by her or by her caretaker who lives two blocks from the cottage. Petitioner asserts that this was necessary because of her bad experiences with undesirable tenants and squatters on lot Nos. 128A and 129. Petitioner, however, had limited time available to interview potential tenants in Lubec. Even though petitioner claims that her "home" was in Maine, she lived and worked in New York during 2002.

In 2002, petitioner spent 1 week vacationing in Lubec. Petitioner also made several business trips to Lubec, but each trip lasted no longer than "a couple of days". Petitioner did not hire a professional to manage the rental of her cottage in

her absence, and petitioner's caretaker did not rent the cottage on petitioner's behalf in 2002.

Petitioner testified that during the week that she was in Lubec in 2002, she rented her cottage to a couple for 1 week for $500. The couple drove into town and discovered the cottage's availability from their inquiries in town. Petitioner did not sign a lease, claiming that it was not the practice in Lubec to sign leases for rentals. Petitioner did not maintain a record of the rental or any business books and records relating to the rental of the cottage.

Petitioner admits that she has no expertise in real estate and that she had neither hired nor sought advice from a real estate professional prior to purchasing the cottage. Petitioner has never earned a profit in the rental real estate activity, and her expenses far exceeded income in 2002 as well as in the years prior to and subsequent to that year. There is also little expectation that the cottage will appreciate in value because Lubec is an isolated and economically depressed town.

Elements of personal pleasure or recreation may signal the absence of a profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. Petitioner described the cottage on lot No. 126 as "beautiful" and her "pride and joy", and she clearly enjoyed and obtained pleasure from being in Lubec and having the cottage available for use by donors and colleagues. This, together with

petitioner's general reluctance to advertise the availability of the cottage, indicates a lack of profit objective.

Petitioner did not withdraw from her job as assistant dean of CUMC to pursue the rental real estate activity. Petitioner received a salary from CUMC and access to an on-campus apartment from CUMC. To the extent that petitioner expended time and effort in Maine, the focus of her efforts was not to rent out the cottage but to plan and build a research laboratory on her Victorian house property for the benefit of CUMC. Petitioner testified that she was planning to use the cottage as an incentive for scientists with families to come and work at the laboratory.

For an activity to constitute a trade or business, "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Even though petitioner testified that she intended to charge the scientists rent, her primary objective was not to make a profit. Rather, the evidence is more consistent with the conclusion that petitioner wished to further the objective of her job; i.e., fundraising.

The Court sustains respondent's determination that petitioner did not engage in the activity for profit within the meaning of section 183(c). Petitioner is not entitled to claim a deduction for real property taxes paid in 2002 for lot No. 126 on Schedule E, but she is entitled to claim a deduction for such

taxes on Schedule A.  Secs. 164(a)(1), 183(b)(1).  Petitioner's deductions for depreciation and the remaining expenses claimed on Schedule E, to the extent not conceded by respondent, are disallowed under section 183(a).

Section 162

Although not raised by either party, the Court will briefly examine whether petitioner may claim the deductions relating to the cottage as unreimbursed employee business expenses under section 162(a).

Taxpayers may deduct "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on a trade or business.  Sec. 162(a).  Services performed by an employee constitute a trade or business for this purpose.  O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).  An employee cannot deduct trade or business expenses to the extent that the employee is entitled to reimbursement from her employer for expenditures related to her status as an employee.  Lucas v. Commissioner, 79 T.C. 1, 6 (1982).

An "ordinary" expense is one that is common and acceptable in the particular business.  Welch v. Helvering, 290 U.S. at 113-114.  A "necessary" expense is an expense that is appropriate and helpful in carrying on a trade or business.  Heineman v. Commissioner, 82 T.C. 538, 543 (1984).  Whether an amount claimed constitutes an ordinary and necessary expense as an employee business expense is a question of fact to be determined from the

evidence presented.  Rule 142(a); <u>Welch v. Helvering</u>, <u>supra</u> at 115.

The evidence does not support a finding that deductions relating to the cottages are ordinary and necessary.  While it may be helpful to petitioner's job as a fundraiser to have lodging available for donors and scientists during events in Maine, it is not common or appropriate for a fundraiser or an employee of a medical school to purchase and maintain real property for that purpose.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155</u>.