# United States Tax Court

T.C. Memo. 2023-63

JOSEPH WILLIAM SHERMAN,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 22276-19.                          Filed May 17, 2023.

————————

Joseph William Sherman, pro se.

*Kimberly A. Santos* and *Nora Demirjian*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*:  Pursuant to section 6213(a),[1] Joseph William Sherman, M.D. (Dr. Sherman) seeks redetermination of a deficiency in federal income tax determined by the Internal Revenue Service (IRS) for taxable year 2015. After concessions, the issues for decision are (1) whether Dr. Sherman's activities associated with Songswell were entered into for profit, and, if so, whether he is entitled to deduct purported business expenses associated with those activities; (2) whether Dr. Sherman is entitled to deduct purported business expenses associated with his medical practice; (3) whether Dr. Sherman is liable for an addition to tax under section 6651(a)(1); and (4) whether Dr. Sherman is liable for an addition to tax under section 6651(a)(2).

—————————————

[1] Unless indicated otherwise, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulatory references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar unless indicated otherwise.

**[\*2]**  We hold that Dr. Sherman did not engage in Songswell activities for profit, and, therefore, he is not entitled to deduct the purported business expenses associated with Songswell for taxable year 2015. We also hold that Dr. Sherman failed to substantiate his purported medical practice business expenses for taxable year 2015, except to the extent conceded by respondent. Consequently, he is not entitled to deduct those additional amounts under section 162(a). Finally, we hold that Dr. Sherman is liable for additions to tax under section 6651(a)(1) and (2).

## FINDINGS OF FACT

This case was tried on October 4, 2022, during the Los Angeles, California, trial session. The parties filed a Stipulation of Settled Issues, a First Supplemental Stipulation of Facts with Exhibits, and a First Amended First Stipulation of Facts with accompanying Exhibits. We incorporate by this reference the stipulations of settled issues and facts, the stipulated exhibits, and any exhibits admitted at trial, except to the extent set forth herein.

Dr. Sherman resided in California when he timely petitioned this Court. Although Dr. Sherman resides in California, he maintains an apartment in Tacoma, Washington, for tax and medical licensure purposes.

I.    *Background*

A.    *Dr. Sherman's Medical Career*

Dr. Sherman is a physician who practices emergency medicine. He graduated from medical school in 1984 and maintains a medical license in the state of Washington. During taxable year 2015, Dr. Sherman worked under his Washington medical license at federal facilities in Arizona. Although he has previously worked in other medical settings, he worked exclusively in Arizona emergency rooms in 2015.

Dr. Sherman works 12- to 24-hour shifts in the emergency room, and he sometimes works up to 40 hours at a time. He estimates that he works approximately 120 hours per month as a physician.[2] However, he

---

[2] Dr. Sherman testified that he worked 120 hours per *week* as a physician, working 12- to 24-hour shifts. It is apparent from the record, however, that Dr. Sherman intended to state that he worked 120 hours per month, not per week.

[*3] does not work every week as a physician. In weeks when he is not working in emergency rooms, Dr. Sherman claims that he spends his time on activities associated with Songswell.

B.    *Songswell Activities*

In addition to medical training, Dr. Sherman's exposure to and training in music began at an early age. His father was head of a music school, and his brother is also engaged in the music industry as a cellist and guitarist. As a result of these connections, Dr. Sherman took courses in music during college and learned to play the guitar.

Dr. Sherman used his musical training to help pay expenses associated with university and medical school in the 1970s and 1980s. He played music at various events, earning enough cash to pay bills and other expenses. He never received any documentation of the cash he earned, and he never made large sums of money playing music.

According to Dr. Sherman, he decided to launch a film company, Songswell, to "scale" his interest in music and to potentially make a large profit. Dr. Sherman did not identify when his Songswell activities began, but he "guesstimated" that he spends 200 to 300 hours per month on Songswell activities, in addition to his work as a physician. There is no evidence before the Court regarding whether Songswell is licensed as a business in any state. Dr. Sherman does not have a business plan for Songswell, and there is no evidence before the Court that activities associated with Songswell have resulted in a profit.

The precise nature of the activity conducted through Songswell— and when that activity was conducted—is not readily apparent from the record before the Court. Dr. Sherman testified that Songswell is (1) a film production company that combines music and film; (2) a website that owns copyrights and other digital assets; and (3) a blog created to give individuals a community to comment and discuss digital assets.

According to Dr. Sherman, Songswell activities include "composing, scriptwriting, filming, editing, computer building, [and] IT maintenance." On brief, Dr. Sherman repeats these claims and adds some additional details, claiming that he is "involved in all aspects of [the] Songswell film production company from filming, acting, music creation, website creation, blog creation, costume design[,] compositing, editing, subtitle creation, and script writing."

**[\*4]** With regard to the film production activities of Songswell, Dr. Sherman hopes that, by combining music and film, he can one day make a large profit. He filmed a skit and music video, but there is no evidence regarding when that filming occurred or whether it was associated with Songswell activity in 2015. Further, it is not clear what, if any, film production activities associated with Songswell occurred in 2015.

Dr. Sherman purchased film and camera equipment for Songswell activities, including some in taxable year 2015. In connection with these purchases, he consulted several vendors regarding what equipment to purchase and technology to use. Dr. Sherman purchased this equipment and technology with money he earned as a doctor, not from a profit he earned through Songswell.

With respect to the copyright and digital assets activities, Dr. Sherman claimed that, through Songswell, he is creating methods to sell music and film. He also stated that he obtains certain digital assets to "be able to sell them worldwide" and "to create methods to sell music and film that scale." However, there is no evidence regarding whether Songswell owns any digital assets or the value of those digital assets.

Finally, Dr. Sherman maintains a website for Songswell. He owns an Internet domain named "songswell.com," as well as a blog named "blog.songswell.com." Dr. Sherman created the blog so that "people can comment and discuss digital assets and have a community." Dr. Sherman stated that he coded and created the website for Songswell, hosting the blog on a server that he also built and maintains. There is no evidence before the Court regarding how the Songswell website or blog appeared in 2015, but Dr. Sherman testified that the website changed between 2015 and the time of trial.

II. *Examination, Substitute for Return, and Notice of Deficiency*

The IRS received information returns from Medical Doctor Associates and AB Staffing Solutions regarding Dr. Sherman's nonemployee compensation for taxable year 2015.[3] The parties agree

---

[3] Medical Doctor Associates issued one 2015 Form 1099–MISC, Miscellaneous Income, to Dr. Sherman. AB Staffing Solutions issued two 2015 Forms 1099–MISC reporting, on each, that it paid Dr. Sherman $43,337 of nonemployee compensation. Respondent conceded that AB Staffing Solutions issued duplicate 2015 Forms 1099–MISC in error. Thus, Dr. Sherman is required to include in his 2015 income only $43,337 of nonemployee compensation from AB Staffing Solutions.

**[\*5]** that Dr. Sherman's total nonemployee compensation for taxable year 2015 is $143,162.

The IRS began an audit in 2019, after Dr. Sherman failed to file a return for taxable year 2015. Dr. Sherman claims that he transmitted a return in August 2018, but respondent denies that the IRS received any such return. Further, Dr. Sherman did not respond to the IRS's inquiry regarding his return for 2015. Thus, on August 12, 2019, the IRS prepared a substitute for return (SFR) for taxable year 2015 based on the information returns filed by Medical Doctor Associates and AB Staffing Solutions.

On October 15, 2019, the IRS issued a notice of deficiency based on the SFR. In the notice of deficiency, the IRS determined a deficiency in tax for 2015 totaling $59,339, with additions to tax under section 6651(a)(1) and (2) and section 6654. Respondent now concedes that Dr. Sherman is not liable for the section 6654 addition to tax.

III.    *The October 30, 2019, Unfiled Return and Reported Expenses*

On October 30, 2019—after the SFR was prepared and the notice of deficiency was issued—Dr. Sherman transmitted a 2015 Form 1040, U.S. Individual Income Tax Return, to the IRS. The IRS did not accept or process the 2015 Form 1040.

The 2015 Form 1040 included the following attachments (1) Schedule C, Profit or Loss From Business, for reported expenses related to Songswell and (2) a second Schedule C for Dr. Sherman's reported expenses related to his emergency medical practice. Each schedule is discussed in turn below.

A.    *Reported Songswell Expenses*

We infer from the record that Songswell did not have any income. Dr. Sherman identified the following expenses related to Songswell:

| Category | Expense |
|---|---|
| Rent or Lease (Vehicles, Machinery, and Equipment) | $921 |
| Meals & Entertainment | 9,640 |
| Wages | 6,523 |
| Other | 87,674 |

Dr. Sherman did not present any receipts for the rent, meals and entertainment, or wages.

**[*6]**    The category labeled "other" consisted of the following expenses:

| Item | Expense |
|---|---|
| Asus Z 79 Motherboard | $483 |
| Intel | 6,291 |
| Custom Enclosure | 619 |
| Alexa Mini Camera | 51,489 |
| Alex Mini Accessories | 19,684 |
| Nuke Composition | 5,120 |
| Film Light Plug-In | 1,000 |
| Total Code Studio | 2,073 |
| Mobee Gimbal | 515 |

Dr. Sherman was unable to produce any documentation or receipts for most of the expenses listed in the "other" category for purported expenses associated with Songswell.

Further, although Dr. Sherman purchased some camera equipment and accessories in 2015, the amounts on the receipts do not match the expenses reported on Schedule C. Additionally, many of his equipment purchases occurred outside the 2015 taxable year.

Finally, the "other" category of expenses does not total $87,674, as reported on Dr. Sherman's Schedule C. Regardless, Dr. Sherman reported $104,758 in expenses associated with his Songswell activities, all of which is disputed by the IRS on the grounds that Dr. Sherman's Songswell activity was not entered into for profit.

### B.    *Claimed Medical Practice Expenses*

Dr. Sherman claimed the following expenses related to his medical practice:

| Category | Claimed | Conceded | Disputed |
|---|---|---|---|
| Advertising | $3,350 | -0- | $3,350 |
| Insurance | 9,430 | -0- | 9,430 |
| Legal and Professional Services | 3,150 | -0- | 3,150 |
| Office Expense | 8,324 | $176 | 8,148 |
| Travel | 18,360 | 8,451 | 9,909 |
| Meals and Entertainment | 6,235 | -0- | 6,235 |
| "Other" Expenses | 3,750 | 1,926 | 1,824 |

In total Dr. Sherman reported $52,599 in expenses associated with his medical practice. On brief respondent concedes $10,554 of the

**[*7]** expenses,[4] leaving $42,045 in dispute. Respondent's concessions are based on Dr. Sherman's partial bank statements. Next, we discuss each category of expenses.

### 1. *Advertising*

Dr. Sherman reported $3,350 in advertising expenses associated with his medical practice. When asked why an emergency room doctor would have advertising expenses, Dr. Sherman stated that "sometimes . . . you need to promote yourself." However, he did not offer any testimony regarding how he promoted himself or the source of the reported advertising expenses.

### 2. *Insurance*

Dr. Sherman also reported $9,430 in professional liability insurance expenses and $3,150 in expenses for legal and professional services. However, Dr. Sherman testified that he does not have any records or documentation to support these expenses. He also admitted that he was estimating the cost of the insurance.

### 3. *Office*

Dr. Sherman also reported $8,324 in office expenses. After concessions, $8,148 of office expenses remain in dispute. Dr. Sherman did not maintain a separate physical office for his medical practice. Rather, the expense represents rent for Dr. Sherman's residences in California and Washington.

### 4. *Travel*

Dr. Sherman also reported $18,360 in travel expenses and $6,235 for meals and entertainment. The IRS conceded $8,451 in travel expenses on the basis of bank statements produced by Dr. Sherman. No concessions were made for meals and entertainment, leaving $16,144 in dispute for travel, meals, and entertainment. Dr. Sherman did not present any receipts supporting these expenses.

---

[4] The conceded amount in the parties' stipulation is incorrect. At trial and on brief, respondent noted that the amount in the stipulation contained a computational error. Instead of $8,628 in concessions for Dr. Sherman's medical practice expenses, respondent conceded $10,554. Further, respondent acknowledged that he conceded the same expense twice, but the error is in Dr. Sherman's favor.

**[\*8]**          5.          *Other*

Finally, Dr. Sherman reported "other" expenses totaling $3,750, representing amounts for medical license fees, continuing education courses, and laundry. Respondent conceded $1,926, leaving $1,824 in dispute. Dr. Sherman did not present any documentation to support the remaining expenses.

OPINION

I.          *Burden of Proof*

The determinations in a notice of deficiency bear a presumption of correctness, *see Welch v. Helvering*, 290 U.S. 111, 115 (1933), and the taxpayer generally bears the burden of proving them erroneous in proceedings in this Court, *see* Rule 142(a)(1).

II.          *Credibility of Witness*

In deciding whether a taxpayer has carried his burden of proof, witness credibility is an important consideration. *Ishizaki v. Commissioner*, T.C. Memo. 2001-318, 2001 WL 1658189, at \*7. "[T]he distillation of truth from falsehood . . . is the daily grist of judicial life." *Diaz v. Commissioner*, 58 T.C. 560, 564 (1972). "As a trier of fact, it is our duty to listen to the testimony, observe the demeanor of the witnesses, weigh the evidence, and determine what we believe." *Kropp v. Commissioner*, T.C. Memo. 2000-148, 2000 WL 472840, at \*3.

Generally, we found Dr. Sherman's testimony to be self-serving, and, at times, lacking in credibility and candor. His testimony failed to corroborate the alleged business activities of Songswell or the reported business expenses associated with his medical practice. Each category of expenses will be discussed in turn.

III.          *Songswell Activity*

First, we determine whether Dr. Sherman's activities related to Songswell were engaged in for profit and, if so, whether Dr. Sherman is entitled to any deductions for expenses associated with Songswell.

          A.          *Analytical Framework*

Section 183(a) provides generally that, if an activity is not engaged in for profit, "no deduction attributable to such activity shall be

**[\*9]** allowed," except as provided in section 183(b). *See Hendricks v. Commissioner*, 32 F.3d 94, 97 (4th Cir. 1994), *aff'g* T.C. Memo. 1993-396. Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

An appeal in this case would lie in the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b); *see also Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971); *Lardas v. Commissioner*, 99 T.C. 490, 494–95 (1992). The Ninth Circuit has held that for a deduction to be allowed under section 162 or 212(1) or (2), a taxpayer must establish that he engaged in the activity in good faith with the predominant, primary, or principal objective and intent of realizing an economic profit, independent of tax savings. *See Wolf v. Commissioner*, 4 F.3d 709, 713 (9th Cir. 1993), *aff'g* T.C. Memo. 1991-212; *Indep. Elec. Supply, Inc. v. Commissioner*, 781 F.2d 724, 726 (9th Cir. 1986), *aff'g Lahr v. Commissioner*, T.C. Memo. 1984-472.

The Ninth Circuit also has held that the focus of this test is the taxpayer's subjective intent, but "objective indicia may be cited to establish the taxpayer's true intent." *Indep. Elec. Supply, Inc. v. Commissioner*, 781 F.2d at 726 (citing Treas. Reg. § 1.183-2(a)). The expectation of profit need not be reasonable, but it must be bona fide. *See Golanty v. Commissioner*, 72 T.C. 411, 425–26 (1979), *aff'd without published opinion*, 647 F.2d 170 (9th Cir. 1981).

Whether the requisite profit objective exists is determined by looking at the surrounding facts and circumstances. *Id.* at 426; *see also Keanini v. Commissioner*, 94 T.C. 41, 46 (1990); Treas. Reg. § 1.183-2(b). "Greater weight is given to objective facts than to a taxpayer's mere after-the-fact statement of intent." *Prieto v. Commissioner*, T.C. Memo. 2001-266, 2001 WL 1196201, at \*6, *aff'd,* 59 F. App'x 999 (9th Cir. 2003); Treas. Reg. § 1.183-2(a) ("In determining whether an activity is engaged in for profit, greater weight is given to objective facts than to the taxpayer's mere statement of his intent.").

The factors listed in Treasury Regulation section 1.183-2(b) are relevant to an analysis of the objective facts surrounding the taxpayer's activities. *See Indep. Elec. Supply, Inc.*, 781 F.2d at 726–27 (noting that section 183 generally is not applicable until it is determined the activity at issue is not engaged in for profit, but the factors nonetheless are relevant in conducting the profit-motive analysis under section 162).

**[\*10]** The relevant factors are (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. *See* Treas. Reg. § 1.183-2(b).

These factors are nonexclusive, and no one factor—or number of factors—is dispositive. *Hendricks v. Commissioner*, 32 F.3d at 98; *Golanty*, 72 T.C. at 426. Instead, all facts and circumstances must be considered, and more weight may be given to some factors than to others. *See Dunn v. Commissioner*, 70 T.C. 715, 720 (1978), *aff'd,* 615 F.2d 578 (2d Cir. 1980).

Generally, the taxpayer bears the burden of proving the IRS's deficiency determination is incorrect. Rule 142(a); *Baxter v. Commissioner*, 816 F.2d 493, 495 (9th Cir. 1987), *aff'g in part, rev'g and remanding in part* T.C. Memo. 1985-378. Thus, if the Commissioner determines that a given activity is not engaged in for profit, that determination is presumed correct, and the taxpayer must prove otherwise. *See Skeen v. Commissioner*, 864 F.2d 93, 94 (9th Cir. 1989) ("The burden of proving the requisite profit motive is on the taxpayer."), *aff'g Patin v. Commissioner*, 88 T.C. 1086 (1987).

B. *Application of the Caselaw and Regulatory Factors*

This is not a difficult case. Although our analysis is focused on Dr. Sherman's subjective intent, it is informed by the objective indicia set forth in the regulations and outlined above. *See Wolf v. Commissioner*, 4 F.3d at 713. Aside from Dr. Sherman's self-serving testimony that the Songswell activity was conducted for profit, little else counsels in favor of a finding of a profit motive. Given the caselaw and the nine factors set forth in the regulations, and on the basis of all the facts and circumstances of this case, we conclude that the Songswell activities were not engaged in for profit during taxable year 2015.

We now turn to explaining our conclusion in greater detail, examining the nine factors in the regulations and the relevant precedent.

[*11]     1.     *Manner in Which Activity Is Conducted*

A taxpayer who works in a "businesslike manner" and "maintains complete and accurate books and records" is more likely to have a profit motive. Treas. Reg. § 1.183-2(b)(1). A "businesslike manner" can be inferred from the taxpayer's maintenance of "complete and accurate books and records," *id.*, and a reasonable business plan, *Den Besten v. Commissioner*, T.C. Memo. 2019-154, at *20 ("Having a business plan may suggest that a taxpayer conducted the activity in a businesslike manner."). Additionally, whether the taxpayer conducts the activity "in a manner substantially similar to other activities of the same nature which are profitable" and whether the taxpayer changes "operating methods, adopt[s] . . . new techniques or abandon[s] . . . unprofitable methods in a manner consistent with an intent to improve profitability" are questions we consider in analyzing this factor's application to the instant case. Treas. Reg. § 1.183-2(b)(1).

The record demonstrates that Dr. Sherman did not conduct Songswell in a businesslike manner. Dr. Sherman admitted that he does not have a business plan for Songswell. No evidence was presented regarding when Songswell activities began, nor precisely what activity occurred in taxable year 2015. Additionally, there is no evidence that Songswell is a licensed business, further indicating that Songswell was not conducted in a businesslike manner. *See, e.g., Dirkse v. Commissioner*, T.C. Memo. 2000-356, 2000 WL 1706720, at *6 (observing that the failure to obtain necessary business license is evidence of failing to carry on activities in businesslike manner).

Dr. Sherman also failed to keep complete and accurate books and records related to Songswell activities and its purported business expenses. He was unable to produce substantiation for most of his reported expenditures associated with Songswell. Further, many of his expenses did not match the receipts that were provided.

Finally, there is no evidence before the Court regarding whether Dr. Sherman conducts Songswell activities in a manner similar to other activities that are profitable, nor is there any evidence regarding how— or whether—Dr. Sherman abandoned unprofitable techniques in favor of profitable techniques.

Thus, this factor weighs heavily against Dr. Sherman.

[*12]     2.     *Expertise of the Taxpayers or Their Advisers*

A taxpayer's preparation for an activity by extensive study of its accepted business, economic, and scientific practices, or consultation with experts in the activity, may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with such practices. Treas. Reg. § 1.183-2(b)(2). Where the taxpayer has such knowledge or advice but does not carry on the activity in accordance with good practice, a lack of intent to derive profit may be indicated. *Id*

Dr. Sherman was exposed to music at a young age and used his music experience to earn money to pay for college and medical school approximately 40 years ago. However, there is no evidence that Dr. Sherman has engaged in extensive studies regarding operating a film production company, a digital assets company, or a blog.

Nor does it appear that Dr. Sherman consulted experts regarding operating a film production company, a digital assets company, or blog. Consulting with industry experts and studying accepted business practices when preparing to engage in an activity may suggest a profit motive. *See* Treas. Reg. § 1.183-2(b)(2). Although Dr. Sherman testified that he consulted experts, he admitted that the experts he referenced were the vendors who sold him equipment. There is no evidence that these vendors offered consultation regarding how to operate a business.

This factor weighs against Dr. Sherman.

    3.     *Taxpayer's Time and Effort*

When a taxpayer devotes considerable time and effort to an activity, "particularly if the activity does not have substantial personal or recreational aspects," that devotion may indicate that the taxpayer had a profit motive. Treas. Reg. § 1.183-2(b)(3). Further, when a taxpayer "withdraw[s] from another occupation to devote most of his energies to the activity," that also may support a finding that the taxpayer had a profit motive. *Id*. Even when a taxpayer devotes only limited time to an activity, if the taxpayer "employs competent and qualified persons to carry on such activity," then that too may indicate a profit motive. *Id*.

Dr. Sherman testified that he spent 200 to 300 hours per month on activities associated with Songswell. We found Dr. Sherman's testimony regarding the amount of time he spent on Songswell to be self-serving, particularly given that he also worked 120 hours as an

**[\*13]** emergency room physician during the same period. Further, Dr. Sherman admitted that he estimated these claimed hours. There is no evidence that Dr. Sherman stepped away from his occupation as a physician to operate Songswell, nor is there evidence that Dr. Sherman employed others to continue operating Songswell when he was working as a physician.

This factor also weighs against Dr. Sherman.

### 4. *Expectation of Appreciation in Value*

Although a taxpayer receives no income from operating his enterprise, he may intend to derive a profit from the potential appreciation of his business assets. *See* Treas. Reg. § 1.183-2(b)(4). There is no evidence that Dr. Sherman's camera equipment would appreciate, and we infer that such equipment would instead experience wear and tear over time and thus depreciate in value. *Wesley v. Commissioner*, T.C. Memo. 2007-78, 2007 WL 968731, at \*2 (inferring that recording equipment would experience wear and tear over time and depreciate).

Accordingly, this factor also weighs against Dr. Sherman.

### 5. *Success of the Taxpayer in Carrying On Other Similar Activities*

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit . . . ." Treas. Reg. § 1.183-2(b)(5). Dr. Sherman did not present any evidence demonstrating that he has had business success in similar activities, turning them from unprofitable to profitable.

To the extent Dr. Sherman's testimony about earning money to perform music while attending school can be construed as supporting this factor, we do not find this factor to be persuasive. There is no evidence that Dr. Sherman's activities related to playing music while in school involved sound and customary business practices that can be transferred to a film production company, a digital assets company, or a blog.

Accordingly, this factor weighs against Dr. Sherman.

**[\*14]**        6.        *History of Income or Losses*

A series of losses during the startup stage of an activity may not necessarily prove that an activity is not engaged in for profit. *See* Treas. Reg. § 1.183-2(b)(6). However, prolonged periods of losses following the initial startup phase of an activity may indicate that the taxpayer did not have a profit motive when he decided to enter into the activity. *Id*. Nonetheless, where losses are due to "customary business risks or reverses" or to "unforeseen or fortuitous circumstances which are beyond the control of the taxpayer," then this inference does not typically arise. *Id*. Examples of "fortuitous circumstances" include "drought, disease, fire, theft, weather damages, . . . or depressed market conditions." *Id*.

Dr. Sherman did not present any evidence demonstrating Songswell's history of income or loss. However, Dr. Sherman admitted that he purchased all of Songswell's camera equipment and claimed expenses with money he earned as a physician. Further, Dr. Sherman reported $104,758 in losses for Songswell for taxable year 2015. This evidence supports an inference that Dr. Sherman did not make a profit from Songswell, and he reported substantial losses associated with Songswell activities.

Thus, this factor also weighs against Dr. Sherman.

7.        *Amount of Occasional Profit*

In an otherwise money-losing venture, a taxpayer's derivation of some profits may support the existence of a profit motive. *See* Treas. Reg. § 1.183-2(b)(7). An "occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit." *Id*. Here, there is no evidence that Dr. Sherman has ever earned a profit related to Songswell activities.

This factor weighs against Dr. Sherman.

8.        *Taxpayer's Financial Status*

When a taxpayer has substantial income or capital at his disposal from sources other than the activity in question, such evidence may indicate that he did not enter into that activity with a profit motive. *See* Treas. Reg. § 1.183-2(b)(8). This is particularly true if the losses from the activity generate substantial tax benefits. *Id*.

[*15] Dr. Sherman earned a substantial income of $143,162 in taxable year 2015. His reported losses from Songswell—in addition to his medical practice expenses—would produce a substantial tax benefit, essentially zeroing out any tax obligation he owed.

Thus, this factor weighs heavily against Dr. Sherman.

### 9. *Elements of Personal Pleasure or Recreation*

Finally, when a taxpayer derives personal pleasure from an activity or finds it recreational, such evidence may suggest that the taxpayer entered into the activity for reasons other than profit. *See* Treas. Reg. § 1.183-2(b)(9). However, this factor is not necessarily dispositive, as "suffering has never been made a prerequisite to deductibility." *Jackson v. Commissioner*, 59 T.C. 312, 317 (1972).

That said, "where the possibility for profit is small . . . and the possibility for gratification is substantial, it is [often] clear that the latter possibility constitutes the primary motivation for the activity." *Dodge v. Commissioner*, T.C. Memo. 1998-89, 1998 WL 88175, at *7 (quoting *Burger v. Commissioner*, T.C. Memo. 1985-523, *aff'd*, 809 F.2d 355 (7th Cir. 1987)), *aff'd without published opinion*, 188 F.3d 507 (6th Cir. 1999). Further, "[a]lthough musical and artistic endeavors generally have personal and recreational elements, a taxpayer's personal enjoyment in pursuing the activity is not sufficient to negate a profit motive if" the other factors listed above indicate that the taxpayer engaged in the activity with a profit motive. *Wesley v. Commissioner*, 2007 WL 968731, at *3.

The personal and recreational elements inherent in Dr. Sherman's Songswell activities are readily apparent. The Songswell activities involve recreational activities related to music, film production, and a blog. Dr. Sherman's Songswell activities arose out of his childhood exposure to music, including learning to play the guitar as a result of his father's and brother's musical influences. In short, a review of the entire record and the testimony at trial persuades us that Dr. Sherman's personal motives and the recreational or personal elements of his Songswell activities outweighed the desire for profit. This factor also weighs against Dr. Sherman.

In sum, on the basis of the foregoing analysis, we find that Dr. Sherman did not engage in Songswell activities with the primary motivation of earning a profit. Accordingly, we sustain the IRS's

**[\*16]** disallowance of alleged business expense deductions associated with Songswell.

IV.    *Medical Practice Expenses*

Next, we determine whether Dr. Sherman is entitled to deduct additional purported business expenses associated with his medical practice.

Section 162(a) permits a deduction for ordinary and necessary expenses paid to carry on a trade or business during the taxable year. An "ordinary" expense is one that is common and acceptable in the particular business. *Welch v. Helvering*, 290 U.S. at 113–14. Moreover, the main function of the word "ordinary" in section 162(a) is to clarify the distinction between expenses that are currently deductible and expenses that are capital. *Commissioner v. Tellier*, 383 U.S. 687, 689–90 (1966). A "necessary" expense under section 162(a) is an expense that is appropriate and helpful in carrying on the trade or business. *Heineman v. Commissioner*, 82 T.C. 538, 543 (1984).

Taxpayers bear the burden of substantiating the amount of any claimed deduction by maintaining the records needed to establish entitlement to such a deduction. *See* § 6001; *Hradesky v. Commissioner*, 65 T.C. 87 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976). The taxpayer must substantiate the amount and the purpose of the expense underlying the deduction. *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001). A taxpayer must also maintain adequate records to demonstrate the propriety of any deduction claimed. *Id.*; *see also* § 6001. "A taxpayer's self-serving declaration is generally not a sufficient substitute for records." *Fine v. Commissioner*, T.C. Memo. 2013-248, at \*4.

Dr. Sherman failed to present any evidence substantiating the reported expenses associated with his medical practice or showing that those expenses were ordinary and necessary. The lack of documentary evidence substantiating the amounts and purpose of these alleged expenses is pervasive. Dr. Sherman has failed to introduce sufficient and credible evidence, and therefore did not meet his burden of proof on this issue.[5] Given Dr. Sherman's failure to meet his burden associated

---

[5] Even if Dr. Sherman had produced some documentation for his expenses, many of the claimed deductions are subject to heightened substantiation standards or are otherwise disallowed. For example, section 274(d) provides that no deduction claimed under section 162 shall be allowed for any traveling expense (including meals

**[\*17]** with his medical practice, we sustain the IRS's determination disallowing the remaining purported business expense deductions.

If a taxpayer is unable to substantiate the amount of a deduction, the Court may nonetheless allow it (or a portion thereof) if there is an evidentiary basis for doing so. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930). To apply the *Cohan* rule, the Court must have a reasonable basis upon which to make an estimate. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). Dr. Sherman failed to properly establish that the alleged expenses—to the extent not conceded by respondent—were ordinary and necessary business expenses. Thus, application of the *Cohan* rule would be inappropriate in this case.[6]

## V.    *Additions to Tax*

Finally, the parties dispute whether, for taxable year 2015, Dr. Sherman is liable for failure to file and failure to pay additions to tax under section 6651(a)(1) and (2), respectively. Under section 7491(c), the Commissioner bears the burden of production with respect to the liability of an individual for any addition to tax imposed. *Higbee*, 116 T.C. at 446.

---

and lodging while away from home) unless the taxpayer satisfies certain heightened substantiation requirements. Those requirements permit a deduction for travel expenses only to the extent the taxpayer proves (1) the amount of each expenditure while away from home; (2) the date of departure and return for each trip and the number of days spent on business; (3) the destination or locality of travel; and (4) the business reason for travel or the expected benefit to be derived from such travel. *See* Temp. Treas. Reg. § 1.274-5T(b)(2). Claimed entertainment expenses require similar heightened substantiation. *Id.* subpara. (3). In this case, Dr. Sherman failed to offer evidence to meet the heightened substantiation requirements. Accordingly, his claimed expense deductions for meals, travel, and entertainment are disallowed for this additional reason.

Additionally, as a general rule taxpayers are unable to claim deductions with respect to the business use of a dwelling unit that is used by the taxpayer as a residence during the taxable year. § 280A(a). Section 280A(c)(1)(A) provides an exception to the general rule to the extent that a taxpayer uses a portion of the dwelling unit, on a regular basis, *exclusively* as the principal place of business for any trade or business of the taxpayer. The term "dwelling unit" includes apartments. § 280A(f)(1)(A). In this case, Dr. Sherman offered no evidence that any portions of his apartments were used exclusively as the principal place of business for his medical practice. Thus, the claimed office expense deductions associated with his apartments are disallowed for this additional reason.

[6] We also note that Dr. Sherman did not invoke the *Cohan* rule as an alternative position.

**[\*18]**  A.  *Failure to Timely File Under Section 6651(a)(1)*

First, the IRS determined that Dr. Sherman is liable for the failure to file addition to tax under section 6651(a)(1). Under section 6651(a)(1), when a taxpayer fails to file any required return on the date prescribed for filing:

> [U]nless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

Dr. Sherman admitted that he did not timely file a return for taxable year 2015, but he claims he transmitted his 2015 tax return in August 2018. Dr. Sherman produced no evidence—beyond his own self-serving statements—demonstrating that he filed his 2015 tax return in 2018. Further, the IRS account transcript record shows that no return was filed before 2019, when the IRS prepared the SFR.

Moreover, there is nothing in the record indicating that Dr. Sherman's failure to timely file his return was due to reasonable cause. *See* § 6651(a)(1). Dr. Sherman appears to argue that he had reasonable cause because he purportedly needed a corrected 2015 Form 1099–MISC from AB Staffing Solutions before he could file his tax return. But we find Dr. Sherman's argument to lack credibility, particularly because he also testified that he requested a corrected 2015 Form 1099–MISC after the State of California began investigating his tax return for taxable year 2015. Regardless, an alleged lack of records did not relieve Dr. Sherman from the obligation to file a tax return. *See, e.g.*, *Jones v. Commissioner*, T.C. Memo. 1995-472, 1995 WL 579285, at \*3 (finding that the taxpayer did not have reasonable cause where necessary tax return documents may not have been available).

Because Dr. Sherman failed to timely file his 2015 return, and because he did not present any evidence that his failure to timely file was due to reasonable cause and not willful neglect, the amount of tax required to be shown on his return is subject to an addition to tax under section 6651(a)(1).

**[\*19]** B.    *Failure to Pay Under Section 6651(a)(2)*

Next, the IRS determined that Dr. Sherman is liable for the failure to pay addition to tax under section 6651(a)(2). Section 6651(a)(2) imposes an addition to tax on taxpayers for their failure to timely pay the amount of tax shown on a return. *See also* § 6651(g)(2). When a taxpayer has not filed a valid return, the section 6651(a)(2) addition to tax may not be imposed unless the Commissioner has prepared a substitute for return that satisfies the requirements of section 6020(b). *See Cabirac v. Commissioner*, 120 T.C. 163, 170–72 (2003), *aff'd per curiam*, No. 03-3157, 2004 WL 7318960 (3d Cir. Feb. 10, 2004).

Respondent met his burden of production by showing that he prepared the SFR, which meets the requirements of section 6020(b), on behalf of Dr. Sherman for taxable year 2015, and Dr. Sherman has failed to pay his federal income tax for 2015. Dr. Sherman has not shown reasonable cause for his failure to pay his income tax, nor has he demonstrated a lack of willful neglect. Thus, we will sustain the addition to tax pursuant to section 6651(a)(2). *See also Lloyd v. Commissioner*, T.C. Memo. 2020-92, at \*19–21, *aff'd*, No. 20-73387, 2022 WL 10449695 (9th Cir. Oct. 18, 2022).

VI.    *Conclusion*

In conclusion, we hold that (1) Dr. Sherman did not conduct Songswell activities with a profit motive, and he is not entitled to deduct purported business expenses associated with Songswell for taxable year 2015; (2) Dr. Sherman is not entitled to deduct additional purported business expenses associated with his medical practice for taxable year 2015; and (3) Dr. Sherman is liable for additions to tax under section 6651(a)(1) and (2).

We have considered all of the arguments made by the parties, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*